*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WANDA FAY MCGLOWN,

      Plaintiff-Appellant,

v

FREDERICK ELLIOTT HALL,

      Defendant-Appellee.

UNPUBLISHED
August 12, 2021

No. 353885
Wayne Circuit Court
LC No. 18-114110-DM

Before: SAWYER, P.J., and BOONSTRA and RICK, JJ.

PER CURIAM.

Plaintiff, Wanda Fay McGlown, appeals as of right a judgment of divorce, which ended plaintiff's marriage to defendant, Frederick Elliott Hall. Because we find no error warranting reversal, we affirm.

## I. FACTUAL BACKGROUND

This case arises out of the parties' divorce, which involved a sizable marital estate including closely held business entities. As aptly summarized by the trial court:

> The parties married on October 2, 2011. Their union produced a daughter ["the minor child"] . . . .
>
>            * * *
>
> Plaintiff is 50 years old and has worked at Chrysler (now Fiat Chrysler of America, hereafter "FCA") since 1995. Plaintiff acknowledged that she was financially self-sufficient before the marriage. Plaintiff currently works as a program manager earning $120,000 a year. In June 2000, Plaintiff purchased a residence at 1954 Edison St. (hereafter "the Edison property") in Detroit's historic Boston-Edison District. As opined by certified appraiser Robert McDonald, . . . the Edison property was worth $40,000 when the parties married in 2011 and is now worth $250,000. After the parties' marriage, they moved into the Edison property

-1-

and lived there until December 2017, when they moved into another home they had purchased and restored . . . .

Defendant is 55 years old and an entrepreneur who owns three businesses that are S corporations: Novatech Computer Training Center (established by Defendant in 1989 to provide computer software training services, but which has ceased operations); Novatech Computer Services (hereafter "Novatech", established by Defendant in 1995 to provide computer and IT consulting services, network design and installation, computer maintenance and repair and web design services); and H&P Protection Services (hereafter "H&P", a business purchased by Defendant in 2003 that provides professional uniformed security guard services). H&P has experienced sustained growth, increasing its gross receipts from just under $750,000 in 2012 to almost $2,500,000 in 2018. Plaintiff was a supportive spouse, using her knowledge, skills and abilities to advise and assist Defendant regarding H&P. The Court finds that Plaintiff reviewed Defendant's presentations, occasionally met with clients, and had an H&P business card. Exhibits demonstrate that Plaintiff also was involved in and assisted with various operational details of H&P at different times, such as obtaining quotes, recruiting security guards for special events, and analyzing and responding to operational issues.

After the parties married, they purchased a home in 2012 on the golf course of the Detroit Golf Club . . . (hereafter "the Hamilton property"). To purchase the Hamilton property, Defendant contributed $147,000, using money that he had saved prior to the marriage that was kept in an H&P savings account. Plaintiff contributed $10,000 by taking out a loan from her 401(k). The parties then engaged in extensive renovation of the Hamilton property over the next several years, with the vast majority of the renovation expenses paid from money from H&P. Plaintiff testified, and the Court finds, that Plaintiff paid from her FCA earnings for appliances, woodwork and landscaping at the Hamilton property, "while [Defendant] took care of everything else." . . . As opined by certified appraiser Robert McDonald, . . . the Hamilton property is worth $985,000.

\* \* \*

The value of H&P and Novatech and the income emanating from them were vigorously disputed at trial, largely because Defendant conceded that he did not distinguish between personal and business expenses, that he paid for many personal expenses using an H&P debit card or cash from H&P or Novatech, and that he did not have records of cash payments. [Cleaned up.]

Eventually, this action proceeded to a seven-day bench trial. Additionally, at posttrial special conferences held in February 2020, the trial court received further testimony from several witnesses before issuing its decision regarding the contested issues. In addition to the testimony of plaintiff and defendant, the court heard testimony from Bruce Knapp and Joseph Cunningham, both CPAs, who testified regarding their valuations of defendant's business entities.

Ultimately, the trial court issued a 40-page opinion and order stating its findings of fact and conclusions of law. As relevant here, the trial court held:

## II. FACTS

The Court makes the following . . . findings of fact:

\* \* \*

Plaintiff did not present sufficient admissible evidence or any expert witness testimony to undermine the initial values arrived at by CPAs Cunningham and Knapp. Plaintiff has essentially challenged the valuation process in general terms and asserted that Defendant failed to provide the necessary documents to allow the business evaluator to prepare a reliable report. See Attachment A, Plaintiff's Proposed Findings of Fact and Conclusions of Law, p.5. More specific assertions in Plaintiff's Proposed Findings of Fact and Conclusions of Law were not supported by admissible evidence.

Given CPA Cunningham's testimony that Defendant provided sufficient information to allow CPA Cunningham to value Defendant's businesses and determine Defendant's income, the very significant add-backs to income made by CPAs Cunningham and Knapp reflecting personal expenses paid for by Defendant's businesses, the additional add-backs subsequently required by the Court for travel/vacation expenses, and the complementary analysis of CPA Knapp, the Court finds that it is reasonable to value H&P based on the testimony of CPAs Cunningham and Knapp. The Court finds that the value of Novatech is zero and the value of H&P is $601,000, as opined by Defendant's expert, CPA Knapp. The Court also finds that Defendant's income for purposes of child support is $248,563 (the $198,563 average for 2016-2018+ $50,000 in additional compensation for personal travel/vacation expenses paid by H&P.)

## III. ANALYSIS AND APPLICATION OF LAW

\* \* \*

## B. CUSTODY, PARENTING TIME AND CHILD SUPPORT

\* \* \*

The Court finds that it is in [the minor child's] best interests for the parties to share joint legal and physical custody.

\* \* \*

The Court orders that support be paid consistent with the Michigan Child Support guidelines, which the Court has calculated to be $261 per month from Defendant to Plaintiff . . . .

## C. DIVISION OF PROPERTY

* * *

### 4. Classification of Defendant's business holdings

Novatech and H&P were business entities that Defendant owned prior to the marriage, and therefore are considered Defendant's separate property . . . . However, a party's separate property may be invaded where the other party "contributed to the acquisition, improvement or accumulation of the property." MCL 552.401.  Furthermore, the appreciation of a premarital asset during the marriage is subject to division as part of the marital estate unless the appreciation was wholly passive.  See *McNamara v Horner*, 249 Mich. App. 177, 184-[185], 642 N.W.2d 385 (2002).  In the instant matter, the Court finds that Plaintiff did contribute to the improvement and appreciation of H&P, implicating MCL 552.401.  Plaintiff was supportive of Defendant's businesses in a variety of ways, including directly by meeting with clients and assisting with operational details, as well as indirectly by assisting with household responsibilities and caring for [defendant's minor children], which permitted Defendant to focus more on the business entities.  As such, Plaintiff is entitled to be awarded an equitable share of the businesses' increase in value during the marriage.  See *Hanaway v Hanaway*, 208 Mich. App. 278, 293-295, 527 N.W.2d 792 (1995).

### 5. Analysis of the *Sparks*[1] Factors

* * *

After balancing all of the *Sparks* factors, the Court concludes there is no reason for a significant departure from a 50/50 division of the parties' assets/liabilities.

### 6. Award

### a. Hamilton Property

For a number of reasons, the Hamilton property is awarded to Defendant . . . .

The Hamilton property is valued at $985,000.  After subtracting the $147,000 of Defendant's separate funds that he used to purchase the Hamilton property and the $10,000 of Plaintiff's separate funds that she contributed to the purchase, there is $828,000 of equity to be divided.  Plaintiff would be entitled to

---

[1] *Sparks v Sparks*, 440 Mich 141; 485 NW2d 893 (1992).

$414,000 (1/2 x $828,000) plus the $10,000 in separate property that she contributed, for a total of $424,000 that Defendant would owe Plaintiff.

### b. Edison Property

The Edison property is Plaintiff's separate property, currently valued at $250,000. Since the property was worth $40,000 at the time of the marriage, there is a $210,000 increase in value during the marriage. After subtracting the $125,000 mortgage . . . , there is $85,000 of equity to be divided. Defendant would be entitled to $42,500 (1/2 x $85,000) that Plaintiff would owe Defendant.

### c. H&P

Plaintiff appears to seek an award of $3.5 million in a "structured settlement" as an equitable division of Defendant's businesses. See Plaintiff's Proposed Findings of Fact and Conclusions of Law (Attachment A), p. 36. However, the evidence at trial supported the conclusion that Novatech is valued at zero, and H&P is valued at $601,000, with a premarital value of $120,000. The increase in value during the marriage is therefore $481,000 ($601,000-$120,000). Plaintiff's 50% share is $240,500 (1/2 x $481,000) that Defendant would owe Plaintiff.

### d. Plaintiff's Defined-Benefit Pension

Defendant's defined-benefit pension, some of which was earned during the marriage, has an unknown value. See Asset and Liability Sheet designated as Exhibit "A" and attached to Joint Final Pretrial Order, p.1. Defendant seeks a $25,000 credit with this asset being awarded to Plaintiff. See Defendant's Findings of Fact and Conclusions of Law (Attachment B), p. 50. This is not disputed in Plaintiff's Responses to Defendant's Findings of Fact and Conclusions of Law (Attachment C). The Court therefore awards Defendant a credit of $25,000, which Plaintiff would owe Defendant.

### e. Plaintiff's Defined Contribution Pension [sic[2]]

Defendant's defined-contribution pension, some of which was earned during the marriage, has a balance of $346,293. See Asset and Liability Sheet designated as Exhibit "A" and attached to Joint Final Pretrial Order, p.1. Defendant seeks a $173,146.50 credit (1/2 x $346,293) with this asset being awarded to Plaintiff. See Defendant's Findings of Fact and Conclusions of Law (Attachment 8), p. 50. This is not disputed in Plaintiff's Responses to Defendant's Findings of

---

[2] Given the value the trial court ascribed to this account, it seemingly intended to refer to plaintiff's defined-contribution account (i.e., her 401(k) account) here, not her "[p]ension."

Fact and Conclusions of Law (Attachment C). The Court therefore awards Defendant a credit of $173,146.50, which Plaintiff would owe Defendant.

### f. Plaintiff's stock options

Plaintiff's stock options, some of which were earned during the marriage, are valued at $80,534. See Asset and Liability Sheet designated as Exhibit "A" and attached to Joint Final Pretrial Order, p.1. Defendant seeks a $40,267 credit (1/2 x $80,534) with this asset being awarded to Plaintiff. See Defendant's Findings of Fact and Conclusions of Law (Attachment B), p. 50. This is not disputed in Plaintiff's Responses to Defendant's Findings of Fact and Conclusions of Law (Attachment C). The Court therefore awards Defendant a credit of $40,267, which Plaintiff would owe Defendant.

### g. Janus Henderson Mutual Fund

This fund, titled to Defendant, has a balance of $49,878, with a premarital value of $2,894. See Asset and Liability Sheet designated as Exhibit "A" and attached to Joint Final Pretrial Order, p.1. As no other evidence was presented regarding this fund, the Court concludes that the significant growth in the fund during the marriage was not merely passive appreciation but rather involved investment contributions of money from the marital estate. The increase in value during the marriage is therefore $46,984 ($49,878-$2,894). Plaintiff's 50% share is $23,492 (1/2 x $46,984) that Defendant would owe Plaintiff.

### h. Offsets and Payment to Plaintiff of Her Share of Equity and Other Property Distribution

The above determinations result in the following offsets:

| | |
|---|---:|
| Plaintiff's share of Hamilton property equity (owed to Plaintiff) | $424,000 |
| Defendant's share of Edison property equity (owed to Defendant) | -$ 42,500 |
| Plaintiff's share of H&P (owed to Plaintiff) | +$240,500 |
| Defendant's credit for Plaintiff's defined-benefit pension (owed to Defendant) | -$ 25,000 |
| Defendant's credit for Plaintiff's defined contribution pension (owed to Defendant) | -$173,146.50 |
| Defendant's credit for Plaintiff's stock options (owed to Defendant) | -$ 40,267 |
| Plaintiff's share of Janus Henderson fund (owed to Plaintiff) | +$ 46,984 |
| | |
| Net amount owed by Defendant to Plaintiff | $430,570.50 |

* * *

### D. SPOUSAL SUPPORT

Plaintiff seeks an award of spousal support. Plaintiff appears to be requesting an award of at least $4,000 per month in spousal support for four (4) years. See Plaintiff's Proposed Findings of Fact and Conclusions of Law (Attachment A), p. 36. It is within the sound discretion of the trial court to require either party to pay spousal support for the suitable maintenance of the other party.

MCL 552.13(1); MCL 552.23(1); *Thames v Thames*, 191 Mich. App. 299, 307; 477 N.W.2d 496 (1991). The main objective of spousal support is to balance the incomes and needs of the parties in such a way as to not impoverish either party. *Hanaway v Hanaway*, 208 Mich. App. 278, 295; 527 N.W.2d 792 (1995).

In determining whether an award of alimony is appropriate, the trial court shall consider the following factors: (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the ability of the parties to work; (4) the source and amount of property awarded to the parties; (5) the ages of the parties; (6) the abilities of the parties to pay alimony; (7) the present situation of the parties; (8) the needs of the parties; (9) the health of the parties; (10) the prior standard of living of the parties and whether either is responsible for the support of others; (11) the contributions of the parties to the joint estate; (12) a party's fault in causing the divorce; (13) the effect of cohabitation on a party's financial status; and (14) general principles of equity. *Olson v Olson*, 256 Mich. App. 619, 630; 671 N.W.2d 64 (2003).

In this matter the Court has evaluated each of these factors as follows:

\* \* \*

### 4. The Source and Amount of Property Awarded to the Parties

Plaintiff is being awarded over $400,000 in assets that could help produce current income. This factor does not favor an award of spousal support.

\* \* \*

### 6. The Ability of the Parties to Pay Spousal Support

If the Court were to use the $248,563 annual income for Defendant calculated for purposes of child support as the income to be used for purposes of calculating spousal support, Defendant would certainly have an ability to pay spousal support, and this factor would favor an award of spousal support. However, Defendant's expert CPA Knapp testified that for purposes of calculating spousal support, in order to avoid a "double dip", see *Loutts v Loutts*, 298 Mich. App. 21; 826 N.W.2d 152 (2012), on remand 309 Mich. App. 203; 871 N.W.2d 298 (2015), only Defendant's fair market value compensation of $107,000 should be utilized, since any excess compensation over that amount has already been taken into account in determining the increase in value of H&P (which the Court has now ordered to be shared equally with Plaintiff.) If $107,000 is used as Defendant's income, Defendant would actually have an annual income less than Plaintiff, disfavoring an award of spousal support. But *Loutts* does not establish a bright-line rule that prohibits using a "double dip". Rather, the question is whether "double dipping" will achieve an outcome that is just and reasonable within the meaning of MCL 552.23(1), which authorizes spousal support "if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage who are committed to the care and

-7-

custody of either party". 298 Mich. App. at 30. In the instant case, the Court does not find that the estate awarded to Plaintiff is insufficient for suitable support and maintenance and therefore does not conclude that the circumstances warrant "double dipping". Accordingly, this factor does not favor spousal support.

### 7. The Present Situation of the Parties

Plaintiff has a good-paying job earning six figures and owns a house for herself and the parties' daughter. Defendant owns a thriving business and is also capable of earning a six figure income. Defendant may have to obtain a large mortgage on the Hamilton property in order to pay Plaintiff her equity interest. This factor is neutral.

* * *

### 10. The Prior Standard of Living of the Parties and Whether Either is Responsible for the Support of Others

Although Plaintiff was financially self-sufficient before the marriage, Plaintiff's standard of living was increased substantially during . . . the marriage. The growth and financial success of H&P permitted the parties to buy a home on the golf course, enjoy expensive travel, obtain luxurious consumer goods, and fund private schooling and various sporting activities for [the minor child]. Defendant is responsible for the support of his [child from a previous marriage]. On balance, this factor slightly favors an award of spousal support.

* * *

After considering and balancing all of the factors, and particularly the significant amount of assets awarded to the parties and the lack of identification of specific needs by Plaintiff, the Court does not conclude that an award of spousal support is warranted.

* * *

### F. MISCELLANEOUS

### 1. Judgment of Divorce

Defendant's counsel shall within twenty-one days prepare a Judgment of Divorce and Uniform Child Support Order consistent with this Opinion and Order, and including all judgment provisions required by statute, and submit them for entry by the Court as a stipulated order or under MCR 2.602(8)(3) ("the seven-day rule"). [Footnotes omitted.]

After the trial court issued its above-quoted opinion and order, plaintiff retained new counsel and her trial attorney was permitted to withdraw. Plaintiff's new counsel filed a motion for reconsideration of the trial court's March 16, 2010 opinion and order under MCR 2.119(F),

arguing that the trial court had palpably erred by including the premarital value of her pension and 401(k) in the marital estate. After entertaining oral argument, the trial court denied plaintiff's motion for reconsideration.

This appeal followed.

## II. ANALYSIS

On appeal, plaintiff raises three distinct claims of error. We address each in turn.

## A. PREMARITAL RETIREMENT BENEFITS

Plaintiff first argues that the trial court either erred or relied on clearly erroneous factual findings when it characterized plaintiff's "entire retirement accounts as marital property" subject to division in the parties' judgment of divorce. We perceive no error warranting reversal.

Generally, an issue is preserved if it is raised in the trial court and pursued on appeal. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). Additionally, issues first raised in a motion for reconsideration are not duly preserved. *Demski v Petlick*, 309 Mich App 404, 441; 873 NW2d 596 (2015). Based on the record, there is no indication that plaintiff argued that the premarital value of her disputed retirement accounts should be excluded from the marital estate before the trial court issued its judgment. The parties were each directed to file proposed findings of fact and conclusions of law following this lengthy and complex divorce action. Plaintiff elected not to address these issues, even after defendant had filed his proposed findings of fact and conclusions of law. Rather, plaintiff first raised such an argument in a motion for reconsideration filed after the trial court had already ruled following trial. Thus, this issue is unpreserved to the extent that plaintiff argues that the trial court should have excluded the premarital value of her disputed retirement accounts from the marital estate in its March 16, 2020 opinion and order.

We acknowledge that this Court may waive preservation requirements "to review an issue not raised in the trial court to prevent a miscarriage of justice," *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008), when consideration is necessary to properly determine the case, or when the issue is a question of law and the facts necessary for the resolution have been fully presented. *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). However, our Supreme Court has cautioned that appellate courts should exercise such discretion sparingly, and only under exceptional circumstances. *Napier v Jacobs*, 429 Mich 222, 233; 414 NW2d 862 (1987). No such exceptional circumstances exist here. Plaintiff could have raised this issue in a timely fashion, yet for whatever reason failed to do so. Further, "[i]t is settled that error requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence". *Lewis v LeGrow*, 258 Mich App 175, 210; 670 NW2d 675 (2003). We therefore consider this issue waived. Even assuming, arguendo, that—following trial, not a decision on a *motion*—plaintiff was entitled to move for reconsideration under MCR 2.119(F) in the first instance, the trial court did not abuse its discretion by denying reconsideration, given that plaintiff could have raised this issue before the court issued its March 16, 2020 opinion and order. See *Pierron v Pierron*, 282 Mich App 222, 264; 765 NW2d 345 (2009).

## B.  DEFENDANT'S INCOME AND BUSINESS VALUATIONS

Plaintiff argues that the trial court "incorrectly calculated" both defendant's income level and the value of his two ongoing business concerns, H&P and Novatech.  However, in plaintiff's briefs on appeal, she fails to cite any legal authority in support of her argument of this issue.[3] Indeed, because she fails to even identify the applicable standard of review, it is difficult to frame her instant argument as a cognizable claim of legal error.  As our Supreme Court observed in *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959):

> It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.  The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow.

Because this state's courts do not serve as the research assistants of the litigants before them, *Walters*, 481 Mich at 388, "[t]his Court will not search for authority to sustain or reject a party's position," *Phillips v Deihm*, 213 Mich App 389, 401; 541 NW2d 566 (1995).  Given plaintiff's failure to adequately brief this issue and her failure to cite any legal authority in support of her argument, we deem the issue abandoned.  See *MOSES, Inc v SEMCOG*, 270 Mich App 401, 417; 716 NW2d 278 (2006) ("If a party fails to adequately brief a position, or support a claim with authority, it is abandoned.").

## C.  SPOUSAL SUPPORT

After considering the 14-factor test concerning spousal support that is discussed in *Richards v Richards*, 310 Mich App 683, 691; 874 NW2d 704 (2015), the trial court declined to award plaintiff spousal support.  Plaintiff contests the trial court's analysis of four of the factors. We again perceive no error warranting reversal.

In *Loutts v Loutts*, 298 Mich App 21, 25-26; 826 NW2d 152 (2012), this Court explained:

> It is within the trial court's discretion to award spousal support, and we review a spousal support award for an abuse of discretion.  We also review for an abuse of discretion a trial court's decision whether to impute income to a party.  An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes . . . .  We review for clear error the trial court's factual findings regarding spousal support.  A finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a

---

[3] The argument of this issue in plaintiff's reply brief *does* contain a reference—not a citation—to the invited-error analysis in "*Cassidy*," i.e., *Cassidy*, 318 Mich App at 476.  But plaintiff only mentions *Cassidy* in arguing that this Court should not apply the invited-error doctrine to this issue, as defendant argues in his brief on appeal.  Put differently, plaintiff does not cite *Cassidy* as authority *supporting* her instant claim of error; she merely argues that *Cassidy*'s invited-error rule in inapplicable here.

mistake was made. If the trial court's findings are not clearly erroneous, we must determine whether the dispositional ruling was fair and equitable under the circumstances of the case. We must affirm the trial court's dispositional ruling unless we are convinced that it was inequitable. [Cleaned up.]

"The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished, and spousal support is to be based on what is just and reasonable under the circumstances of the case." *Richards*, 310 Mich App at 691. When considering whether to award spousal support, a court should consider the following nonexclusive factors:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) *the source and amount of property awarded to the parties*, (5) the parties' ages, (6) *the abilities of the parties to pay alimony*, (7) *the present situation of the parties*, (8) the needs of the parties, (9) the parties' health, (10) *the prior standard of living of the parties and whether either is responsible for the support of others*, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Id*. (cleaned up; emphasis added).]

Plaintiff first argues that the trial court clearly erred by finding that the fourth factor (i.e., the source and amount of property awarded to the parties) did not favor an award of spousal support here. Specifically, plaintiff argues that, in light of the record evidence and the low prevailing interest rates in contemporary society, the trial court clearly erred insofar as it held that plaintiff's award of more than $430,000 could be used to help produce future income.

We are not definitely and firmly convinced that the trial court made a mistake in that regard. Plaintiff may be correct that today's prevailing interest rates are very low, such that the posttax return on a low-risk investment (such as a treasury bond or a certificate of deposit) will generally be nominal and may well fail to keep pace with inflation. But plaintiff's argument ignores that such low-risk investments are not the only options available for investors. Under the property division ordered below, plaintiff was awarded a rather substantial amount—$430,570.50—which defendant was to pay in liquid funds, including by refinancing the Hamilton property if necessary. Given that plaintiff admittedly has a steady job with FCA grossing about $120,000 annually, and given that she was awarded one of the parties' residences, we find no clear error in the trial court's finding that she has the means to reasonably support herself without invading the $430,570.50 that she was awarded below. That sum would be sufficient to purchase a rental property or a business franchise, either of which would presumably produce both current income for plaintiff and tax benefits in the form of deductions for depreciation. Alternatively, by investing $430,570.50 in a prudent portfolio of stocks with moderate dividend yields, plaintiff would be able to generate a substantial amount of future income. Indeed, there are numerous potential income-yielding investment options, particularly for investors with such substantial liquid assets. Therefore, we are not convinced that the trial court clearly erred when it found that plaintiff could earn substantial current income using her property award in this case, and we reject her claim of error concerning the fourth spousal-support factor.

As to the sixth factor (i.e., the abilities of the parties to pay alimony), plaintiff argues that the trial court erroneously applied the "double dip" rationale set forth in *Loutts*, 298 Mich App at 26-30, which regards the imputation of income to a party for purposes of spousal support in "situations where a business or professional practice is valued by capitalizing its income, some or all of which is also treated as income for spousal support purposes." (Cleaned up.) In particular, plaintiff argues that, under the circumstances presented here, the trial court should have found that "double dipping" in plaintiff's favor was warranted because defendant "retains H&P and his half of the 'equity' of the business," from which he can continue to generate income in the future. We find no error or clear error on the trial court's behalf.

As explained in *Loutts*:

> "Double dipping"—or tapping the same dollars twice—refers to situations where a business or professional practice is valued by capitalizing its income, some or all of which is also treated as income for spousal support purposes.

> > When the main value of a business (such as a service business or professional practice) is goodwill derived from its ability to generate future income, the appraisal typically involves determining the reasonable compensation of the owner, that is, what the owner would earn working for someone else if he or she did not own the business. The extra income (sometimes called excess compensation) earned over and above that reasonable compensation represents the investment return of the business and is an important element in the value of the business. To the extent that a nonowner spouse shares in excess compensation that was rolled into the value of the business, some practitioners argue that this same income should be excluded from consideration in support calculations because to include it would amount to a double dip by awarding a share of that excess compensation as part of the property division, and then another share of the same income stream as part of a support award.

> \* \* \*

> . . . Michigan's statute governing spousal support favors a case-by-case approach to determining spousal support. MCL 552.23(1) provides:

> > Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage who are committed to the care and custody of either party, the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after

-12-

considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

Thus, a trial court's decision to award spousal support is discretionary and should reflect what is just and reasonable under the circumstances of the case. Parties to a divorce action are entitled to individual consideration based on the law and facts applicable to their case[.] Spousal support does not follow a strict formula . . . . Accordingly, we decline to adopt a bright-line rule with respect to "excess" income and hold that courts must employ a case-by-case approach when determining whether "double-dipping" will achieve an outcome that is just and reasonable within the meaning of MCL 552.23(1). [*Id*. at 26-30 (cleaned up).]

In this case, after correctly noting that *Loutts* declined to adopt a "bright-line rule" with regard to "double dipping" in the instant context, the trial court held that it was unnecessary to impute additional income to defendant under a double-dipping theory because the property awarded to plaintiff was sufficient to ensure "the suitable support and maintenance" of both plaintiff and the minor child for purposes of MCL 552.23(1). In her brief on appeal, plaintiff tacitly admits that the trial court was correct in that regard. She admits that, notwithstanding the trial court's disputed decision concerning spousal support, she has the means to maintain "a stable middle-class lifestyle." Given her stable gross salary of approximately $120,000 annually, the property awarded to her below, the trial court's award of child support, and the fact that the trial court ordered an even distribution of overnights for parenting time, we agree that plaintiff should have the financial wherewithal to suitably support and maintain herself and the minor child without the aid of spousal support. In sum, we are not convinced that the trial court erred in applying the rule of law set forth in *Loutts* or that it relied on clearly erroneous factual findings in doing so. Thus, we reject plaintiff's instant claim of error.

Next, plaintiff argues that the trial court "wrongfully" determined that the seventh factor (i.e., the present situation of the parties) was "neutral." We perceive no clear error in that regard.

In so ruling, the trial court reasoned as follows:

Plaintiff has a good-paying job earning six figures and owns a house for herself and the parties' [minor child]. Defendant owns a thriving business and is also capable of earning a six figure income. Defendant may have to obtain a large mortgage on the Hamilton property in order to pay Plaintiff her equity interest. This factor is neutral.

Given that both parties enjoy relative financial security, we are not definitely and firmly convinced that the trial court made a mistake in this regard. On the contrary, we agree with the trial court's finding that this factor neither favored nor disfavored an award of spousal support in this case.

Finally, plaintiff argues that the trial court "wrongfully" determined that the tenth factor (i.e., the prior standard of living of the parties and whether either is responsible for the support of others) did not favor an award of spousal support. Plaintiff simply misstates the record. After

-13-

considering this factor, the trial court found that it "slightly favor[ed] an award of spousal support" in plaintiff's favor. Thus, we reject plaintiff's strawman claim of error concerning the tenth factor.[4]

Affirmed.

/s/ David H. Sawyer
/s/ Mark T. Boonstra
/s/ /Michelle M. Rick

---

[4] Plaintiff merely challenges the trial court's ruling with regard to the four spousal-support factors discussed in this opinion. She does not argue that the trial court's overall ruling should be overturned as unjust or inequitable. Consequently, she has abandoned any such argument. See *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999) ("It is axiomatic that where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court."). Regardless, after plenary review of the record in this case and the trial court's resulting opinion, we are not persuaded that the trial court's refusal to award spousal support was inequitable or unjust. Therefore, we are obliged to affirm that dispositional ruling. See *Loutts*, 298 Mich App at 26 ("We must affirm the trial court's dispositional ruling unless we are convinced that it was inequitable.").