# STATE OF MICHIGAN

# COURT OF APPEALS

GEORGII B. LOUTTS,

Plaintiff-Appellee,

v

IRINA V. LOUTTS,

Defendant-Appellant.

FOR PUBLICATION
February 10, 2015
9:05 a.m.

No. 318468
Washtenaw Circuit Court
LC No. 08-002970-DM

Before: SAAD, P.J., and OWENS and K.F. KELLY, JJ.

PER CURIAM.

In this post-judgment divorce proceeding, defendant Irina Loutts appeals by leave granted[1] two orders issued by the trial court on July 17, 2013, and September 12, 2013, which recalculated spousal support, but denied defendant's request to modify and extend spousal support and denied defendant's request for attorney and expert witness fees. For the reasons discussed below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

The parties are Russian immigrants who were married in 1988 and came to the United States a few years later. They have one adult son. In 2000, plaintiff Georgii (referred to as George) Loutts started QPhotonics, a business that buys, sells, imports and exports light emitting diodes and laser diodes. He has a Ph.D in Materials Science earned in 1990 from General Physics Institute in Moscow, and worked as a physics professor at Norfolk State University in Virginia until the parties moved to Ann Arbor in 2007.

Defendant has a Ph.D in International Studies, earned in 2004 from Old Dominion University in Norfolk, Virginia, and a Master's degree in Economics from Moscow State University in Moscow. Defendant had earned $14,000 per year as an adjunct professor at Old Dominion, and was hired as bookkeeper/accountant for QPhotonics at a salary of $2,000 per

---

[1] *Loutts v Loutts*, unpublished order of the Court of Appeals, entered March 26, 2014 (Docket No. 318468).

-1-

month after the parties moved to Ann Arbor. Near the time of the divorce in 2008, defendant was fired from the QPhotonics job.

Plaintiff filed for divorce in December 2008. Following a bench trial, the parties' divorce judgment was entered on March 15, 2010. The trial court found that permanent spousal support was not appropriate "because both parties have PhDs, are in good health, and are clearly employable." However, plaintiff was required to pay defendant rehabilitative spousal support in the amount of $1,510 per month for a period of four years. Plaintiff was awarded the marital home, and defendant was ordered to vacate the home before April 1, 2010, which she did. The trial court determined the value of QPhotonics to be $280,000 and awarded the business to plaintiff, and half of its value, $140,000, to defendant. The rest of the property was split approximately equally with plaintiff being ordered to pay defendant $247,788 as an equalizer. At trial, defendant had indicated some intent to develop a business similar to QPhotonics. Consequently, in the divorce judgment, the trial court ordered that defendant was restrained for three years from competing in any way with QPhotonics. Because both parties requested to be awarded the company and issue a noncompete restriction against the other spouse, this Court upheld the restriction. *Loutts*, 298 Mich App at 36.

Following the judgment of divorce, defendant appealed to this Court which remanded to the trial court to (1) address and decide defendant's request for attorney and expert fees under MCR 3.206(C)(2)(a), (2) redetermine spousal support, including whether the equities in the case warrant utilizing the value of QPhotonics for purposes of both property division and spousal support, and (3) recalculate spousal support, imputing to defendant an income of $34,000. *Loutts v Loutts*, 298 Mich App 21, 25, 31, 34; 826 NW2d 152 (2012).

Nine months after this Court's remand decision, defendant filed a "Motion to Recalculate Spousal Support, Modify Spousal Support, and Extend It; and For Attorney Fees and Expert Witness Fees." Defendant requested that the trial court hold an evidentiary hearing on spousal support, attorney fees, and expert witness fees, and that it modify and extend her spousal support based on her continuing need for support and plaintiff's ability to pay. Defendant argued that her health had deteriorated substantially. Specifically, she alleged that she suffered from bleeding stomach ulcers that led to hospitalization a few times, the first occurring in March 2012. Nevertheless, defendant asserted that she continued to look for work. However, she alleged that she was unable to obtain suitable employment because she was over-qualified for the few jobs that existed in her geographical area, and that Michigan's declining economy made it near impossible to find work.

Based on the extensive nature of the file, the trial court determined that an evidentiary hearing was not necessary and declined defendant's request for one. The trial court dispensed with oral argument and decided the matter based on the parties' written submissions pursuant to MCR 2.119(E)(3). The trial court stated that rehabilitative spousal support had been ordered at $1,510 per month retroactive to April 23, 2009, and that it terminated on April 23, 2013. Despite defendant claiming that her health problems began prior to September 2012, the trial court noted that she waited until June 14, 2013 to request to modify and extend spousal support. The trial court noted that the spousal support terminated before the request to modify and extend was made, despite the fact that the alleged change of circumstance occurred nearly one year prior to the termination. Accordingly, the trial court held that any request for a modification or extension

-2-

of spousal support must occur before the termination of the duty to pay. The trial court acknowledged that MCL 552.28 authorizes the modification of alimony on a showing of changed circumstances, but noted that defendant's reading of the rule allows a party to "come back five, ten or even 20 years later to request a modification of spousal support because of a 'change of circumstance,' " which in the trial court's opinion is unreasonable. Therefore, the trial court denied defendant's request to modify and extend spousal support. The trial court did, however, recalculate the spousal support using $34,000 as defendant's income. This increased defendant's monthly spousal support to $1,790, for a total of $85,920 over four years, which was $13,440 more than the original award.

With regard to the remaining issues raised in defendant's motion, as well as this Court's remand directives, the trial court took them under advisement and addressed them in the September 13, 2013 order. The trial court determined that the equities in this case did not warrant using the value of QPhotonics for purposes of both property division and spousal support, and that defendant's request for attorney and expert witness fees was without merit. Consequently, this appeal ensued.

## II. SPOUSAL SUPPORT

Defendant first challenges the spousal support award and the trial court's decision to deny her motion to modify and extend spousal support. The standard of review regarding a trial court's decision to award spousal support was adequately stated in this Court's previous opinion:

> It is within the trial court's discretion to award spousal support, and we review a spousal support award for an abuse of discretion. *Woodington v Shokoohi*, 288 Mich App 352, 355, 792 NW2d 63 (2010); *Berger v Berger*, 277 Mich App 700, 726, 747 NW2d 336 (2008). We also review for an abuse of discretion a trial court's decision whether to impute income to a party. *Carlson v Carlson*, 293 Mich App 203, 205, 809 NW2d 612 (2011). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Woodington*, 288 Mich App at 355. "The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case." *Berger*, 277 Mich App at 726. We review for clear error the trial court's factual findings regarding spousal support. *Id.* at 727. A finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake was made. *Woodington*, 288 Mich App at 355. If the trial court's findings are not clearly erroneous, we must determine whether the dispositional ruling was fair and equitable under the circumstances of the case. *Berger*, 277 Mich App at 727. We must affirm the trial court's dispositional ruling unless we are convinced that it was inequitable. *Id.* [*Loutts*, 298 Mich App at 25-26.]

At the outset, we decline to address defendant's argument that spousal support in the amount of $1,510 per month for four years was insufficient because the trial court did not properly consider the spousal support factors set out in *Olson v Olson*, 256 Mich App 619, 631; 671 NW2d 64 (2003), as we are bound by the law of the case doctrine. See *Ashker ex rel Estate*

*of Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001). This Court in *Loutts* rejected defendant's same argument and concluded that the record supported the trial court's factual findings regarding the spousal support factors. *Loutts*, 298 Mich App at 31-33. This Court remanded only for the trial court to recalculate spousal support by imputing to defendant an income of $34,000, rather than $40,000, and to redetermine spousal support by deciding whether the equities in this case warranted utilizing the value of QPhotonics for purposes of both property division and spousal support. *Id.* at 31, 34.

We also decline to address defendant's argument that the trial court erred by failing to grant an evidentiary hearing on the motion to extend spousal support because defendant abandoned this issue by failing to address the merits of her assertion of error. *Thompson v Thompson*, 261 Mich App 353, 356; 683 NW2d 250 (2004). The trial court stated that based on the extensive nature of the file, no evidentiary hearing was necessary. On appeal, defendant does not argue how this decision was error.

Defendant argues on appeal that there is no requirement that a motion to modify or extend spousal support be made within the initial term of support that was awarded. The trial court denied defendant's motion to modify and extend spousal support, citing the fact that the support terminated on April 23, 2013, before the request to modify and extend was made, and held that any request to modify or extend had to be made before the support terminated.

MCL 552.28 creates a statutory right for either party to seek modification of alimony, and provides:

> On petition of either party, after a judgment for alimony or other allowance for either party or a child, or after a judgment for the appointment of trustees to receive and hold property for the use of either party or a child, and subject to section 17, the court may revise and alter the judgment, respecting the amount or payment of the alimony or allowance, and also respecting the appropriation and payment of the principal and income of the property held in trust, and may make any judgment respecting any of the matters that the court might have made in the original action.

In interpreting MCL 552.28, our Supreme Court in *Rickner v Frederick*, 459 Mich 371; 590 NW2d 288 (1999), determined that the plain language of the statute did not create a bright-line rule such as the one imposed by the trial court in this case. In *Rickner*, the trial court awarded the plaintiff alimony, but provided that it would be automatically reviewed in two years. *Id.* at 372. The award was later modified to state that it would terminate if plaintiff died, remarried, or cohabitated with a man. *Id.* at 373-374. After it was reported that the plaintiff was cohabitating with a man, the trial court cancelled the alimony and ordered that the file be closed. *Id.* at 374-375. Almost two years after the file was closed, and three years after the alimony was stopped, the plaintiff was no longer cohabitating and moved to reinstate the alimony. She also cited the fact that her multiple sclerosis had worsened substantially and she was unable to work. *Id.* at 375. Expressing its concern in language nearly identical to that employed by the trial court in the present case, the trial court in *Rickner* denied the motion to reinstate the alimony, stating,

[T]here must come a time where these matters are over with. The alimony has been terminated. To think then that person could come in in five years, ten years, 20 years later and ask again that alimony be reinstated, the Court finds to be a situation that simply would never put matters to rest. One would never know when the other party might decide that they want to come in and at least file a motion. Maybe they can't meet the criteria, as has been pointed out by counsel, because there are certain criteria, but these matters have to be laid to rest. [*Id.* at 376.]

This Court affirmed, but our Supreme Court reversed, stating,

In this instance, we are faced with a statute that simply provides that "on petition of either party, after a judgment for alimony . . . the court may revise and alter the judgment, respecting the amount or payment of the alimony . . ., and may make any judgment respecting any of the matters that the court might have made in the original action." MCL 552.28; MSA 25.106. This is a case in which the court originally provided alimony, and thus continuing jurisdiction is plainly provided by the statute.

This conclusion is buttressed by the absence of a prior Michigan appellate decision holding that the statutory power to modify is extinguished if it is once exercised to eliminate alimony. Further, the statutory power to modify is not dependent on triggering language in the judgment.

For these reasons, we are persuaded that the proper reading of the statute is that the Legislature intends, in cases in which alimony is initially ordered, that the court retain the power to make necessary modifications in appropriate circumstances. [*Id.* at 378-379 (internal citation and footnote omitted).]

Accordingly, based on *Rickner* and the plain language of MCL 552.28, it was error for the trial court to interpret the law to state that any request to modify or extend spousal support had to be made before the support terminated. However, we conclude that this error was harmless because it is implicit in the trial court's two orders that defendant failed to show a change of circumstances to warrant modification or extension of the rehabilitative spousal support.

To modify a spousal support award, the moving party must show that there has been a change of circumstances since the judgment of divorce. *Moore v Moore*, 242 Mich App 652, 654; 619 NW2d 723 (2000). Defendant argued that her changed circumstances were her deteriorating health and her inability to find work based on Michigan's declining economy. In its first order, although the trial court cited the fact that defendant's motion was untimely, it also noted that it was reviewing all the documents and testimony and had the case under advisement as to the modification of spousal support. The court further noted that it was very specific in ordering rehabilitative support for four years and denying permanent spousal support. In its second order, it noted that defendant was clearly employable based on her education and professional experience at the time the divorce judgment was entered and referenced the expert testimony from the trial regarding her potential job prospects. The trial court made it clear in its two orders that in addition to determining that defendant's motion was untimely, it was also

relying on the reasons initially set forth in the divorce judgment as a basis for only awarding rehabilitative spousal support for four years.

Further, as the trial court noted in its first order, despite her claiming that her ulcers began in March 2012, defendant did not file her motion to modify or extend spousal support until June 2013, which certainly diminishes the urgency for further spousal support to address her alleged health issues. Moreover, except for the few hospitalizations that prevented her from working while she was in the hospital, defendant never asserted that her alleged medical issues hindered her ability to work. In fact, she stated that despite her ulcers, she continued to look for employment. Her main reason for seeking continued spousal support appears to be the fact that she could not obtain suitable employment due to the fact that she was overqualified for the jobs available in her geographical area and that Michigan's economy was declining. However, she did not identify which jobs, if any, for which she applied and was turned down based on her qualifications. In fact, defendant did not provide evidence to support any of the allegations made in her motion to modify or extend spousal support. Thus, the record is clear that defendant did not sustain her burden to show a change of circumstances since the divorce judgment, and therefore, the trial court did not abuse its discretion by denying her motion to modify or extend spousal support.

Next, defendant argues that the trial court erred by determining that the equities in this case did not warrant utilizing the value of QPhotonics for purposes of both property division and spousal support. The trial court determined that the valuation of QPhotonics could be used for either property division or spousal support, but not both. However, this Court held that there is no bright-line rule. *Loutts*, 298 Mich App at 31. Rather, MCL 552.23(1), which governs spousal support, favors a case-by-case approach. *Loutts*, 298 Mich App at 29. This Court stated that a trial court's decision to award spousal support "should reflect what is just and reasonable under the circumstances of the case." *Id.* at 30 (quotation marks and citations omitted). Because the trial court applied a bright-line rule and did not consider the specific facts and circumstances of the case, this Court directed the trial court on remand to redetermine spousal support by deciding whether the equities in this case warrant utilizing the value of QPhotonics for purposes of both property division and spousal support. *Id.* at 31.

On remand, the trial court thoroughly discussed its decision to use the value of QPhotonics for the purpose of property division, but not spousal support. The trial court relied on plaintiff's expert who stated that "where a business is valued on the present value of the future income to the owner, some of the earnings/profits are considered as payment for labor (reasonable compensation) and the remaining profits (excess compensation) are reduced to present value and multiplied by a factor to yield a business value." The trial court stated, "If this excess compensation is considered in awarding spousal support, then it could be argued that the Court would be awarding the same dollars twice." Further, the trial court cited defendant's extensive bad behavior during the proceedings, including numerous unsubstantiated allegations she made against plaintiff, and the fact that she did receive half the value of the business, that resulted from plaintiff's own labors. The court further noted that defendant had extensive knowledge of QPhotonics and could easily establish a competing business that would "create havoc for," and significantly reduce the value of, QPhotonics. Therefore, contrary to defendant's argument, the trial court did as directed by this Court and considered the equities of this case and what was just and reasonable under the circumstances, to determine that the value of the business

would only be used for the purposes of property division. We conclude that the record supports the trial court's factual findings, and its decision is within the range of reasonable and principled outcomes.

## III. ATTORNEY FEES AND COSTS

Finally, defendant argues that the trial court erred by declining to award attorney and expert witness fees. We disagree. We review for an abuse of discretion a trial court's decision to award attorney fees in divorce proceedings. *Woodington*, 288 Mich App at 369. We review for clear error the findings of fact on which the trial court bases its decision, and any issues of law are reviewed de novo. *Id.*; see also *Myland v Myland*, 290 Mich App 691, 701-702; 804 NW2d 124 (2010).

This Court remanded for the trial court "to address and decide defendant's request for attorney and expert fees under MCR 3.206(C)(2)(a)." This rule states:

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that
>
> (a) the party is unable to bear the expense of the action, and that the other party is able to pay . . .

"This Court has interpreted this rule to require an award of attorney fees in a divorce action 'only as necessary to enable a party to prosecute or defend a suit.' " *Myland*, 290 Mich App at 702, quoting *Gates*, 256 Mich App at 438. "With respect to a party's ability to prosecute or defend a divorce action, a party 'may not be required to invade her assets to satisfy attorney fees when she is relying on the same assets for her support.' " *Id.*, quoting *Maake v Maake*, 200 Mich App 184, 189; 503 NW2d 664 (1993).

Further, the *Myland* Court went on to state that "a party sufficiently demonstrates an inability to pay attorney fees when that party's yearly income is less than the amount owed in attorney fees." *Id.* Although this Court in *Loutts* seemed to imply that this is a dispositive rule, see *Loutts*, 298 Mich App at 25,[2] a fair reading of *Myland* indicates otherwise. *Myland* cited *Stallworth v Stallworth*, 275 Mich App 282, 288-289; 738 NW2d 264 (2007), for the proposition that "a party sufficiently demonstrates an inability to pay attorney fees when that party's yearly

---

[2] This Court in *Loutts* noted that defendant demonstrated her inability to pay because she alleged that her attorney fees totaled over $62,000, which is more than her annual income. *Loutts*, 298 Mich App at 25. Although not mentioned by the parties in this appeal, we note that this statement does not implicate the law of the case doctrine because this Court did not specifically decide that defendant demonstrated an inability to pay. Rather, this Court remanded for the trial court to specifically address and decide defendant's request for attorney fees under MCR 3.206(C)(2)(a), which included a determination whether defendant demonstrated an inability to pay.

income is less than the amount owed in attorney fees." *Myland*, 290 Mich App at 702. In *Stallworth*, this Court stated the following:

> Necessary and reasonable attorney fees may be awarded to enable a party to carry on or defend a divorce action. In the present case, the trial court decided that awarding plaintiff attorney fees was necessary to enable her to obtain a divorce. The parties stipulated that each attorney was owed $18,500. Plaintiff was awarded $10,000 in attorney fees. Because plaintiff's yearly income is less than the amount she owed her attorney, she sufficiently demonstrated her inability to pay her attorney fees. Furthermore, defendant earns more than double what plaintiff earns in a year, which demonstrated his ability to contribute to plaintiff's attorney fees. Under these circumstances, the trial court's ruling was within the range of reasonable and principled outcomes. [*Stallworth*, 275 Mich App at 288-289.]

Therefore, it is clear that this Court in *Stallworth* was merely stating that the particular factual circumstances of the case show that the plaintiff established her inability to pay. The Court did not state that when a party's attorney fees exceed that party's yearly income, it is dispositive of the party's ability to pay in all cases. Rather, it is merely an example of one way a party may demonstrate an inability to pay, and whether a party has an inability to pay is dependent on the particular facts and circumstances of each case. As the *Myland* Court stated,

> [i]t [i]s incumbent upon the trial court to consider whether attorney fees [a]re necessary for plaintiff to defend her suit, including whether, under the circumstances, plaintiff would have to invade the same spousal support assets she is relying on to live in order to pay her attorney fees and whether, under the specific circumstances, defendant has the ability to pay or contribute to plaintiff's fees." [*Myland*, 290 Mich App at 703.]

This requires a trial court to give "special consideration to the specific financial situations of the parties and the equities involved." *Id.*

In this case, the trial court concluded that defendant failed to carry her burden of proof that she was unable to bear the expense of the litigation. The trial court cited the fact that defendant received a cash equalizer payment of $247,788, rehabilitative spousal support for four years, and $50,000 early in the litigation as an advance against the property settlement. These findings are not clearly erroneous, particularly where the record shows that defendant received approximately $310,000 in cash from the divorce, which included a cash equalizer payment of $247,788 and a distribution of $62,630.50 from plaintiff's retirement account, as well as $1,510 in monthly spousal support for four years. Defendant did not show that she would have to invade the spousal support assets that she is relying on to live to pay her attorney fees and costs. See *Myland*, 290 Mich App at 702-703.

Further, this Court has interpreted MCR 3.206(C)(2)(a) to require attorney fees "only as necessary to enable a party to prosecute or defend an action." *Gates*, 256 Mich App at 438. The trial court cited the fact that a substantial amount of the fees and costs incurred by defendant were due her own conduct in pursuing unsubstantiated claims. The trial court stated that

defendant participated in a "clear fishing expedition" that was without merit. Therefore, according to the trial court decision, it is clear that defendant incurred substantial fees and costs that were not necessary to defend the divorce action. We conclude that the trial court properly gave special consideration to the equities involved in this case when declining to award defendant attorney fees and costs, see *Myland*, 290 Mich App at 703, and therefore, it did not abuse its discretion.

Affirmed.

/s/ Henry William Saad
/s/ Donald S. Owens
/s/ Kirsten Frank Kelly