*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARCIE GLOWACKI,

Plaintiff-Appellant,

v

MARTIN GLOWACKI,

Defendant-Appellee.

UNPUBLISHED
September 14, 2023

No. 361775
Oakland Circuit Court
LC No. 2017-856477-DO

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order denying her motion for postjudgment attorney fees in this divorce case. We affirm.

## I. BACKGROUND

This is the third time this case has been before this Court. In 2019, plaintiff appealed the trial court's judgment of divorce, challenging the trial court's division of the marital estate, particularly with regard to defendant's medical practice and the court's decision to equally apportion a significant joint and several tax liability. Plaintiff also challenged the trial court's decision to forever bar spousal support after four years. This Court's prior opinion provides the following relevant background summary:

> The parties married in April 2004. Although the parties did not have any children of the marriage, plaintiff had two sons from a previous marriage. Defendant was in medical school when the parties met. Before and during the early years of the parties' marriage, plaintiff worked in the aviation industry, selling seats on private planes for both her own business and another company. In 2007, after defendant had obtained his medical degree, he established a medical practice known as the Sunrise Institute of Pain Management ("Sunrise"). Plaintiff contributed funds to assist in establishing this practice and she was involved in managing the practice until approximately 2011 or 2012, when she decided to remain at home to care for her two sons and the marital home.

-1-

Despite the fact that Sunrise generated revenues in excess of $1.5 million annually, the parties fell behind in their tax obligations to the state of Michigan and the United States government. At the time of trial in 2018, the parties owed approximately $2.7 million in outstanding taxes to the state of Michigan and the Internal Revenue Service (IRS). Although the IRS initially granted plaintiff innocent-spouse relief with regard to a portion of the tax liability, it later denied plaintiff innocent-spouse relief with respect to tax years 2011-2014 and 2016.

At trial, the parties attributed the tax debt to lavish spending, with each party blaming the other for the spending and financial decisions. Similarly, both parties took credit for the launch of defendant's medical practice. At the time of trial, defendant's income from his medical practice was approximately $1 million annually. Meanwhile, plaintiff claimed that she had to sell personal belongings and jewelry, and accept money from her children, to make ends meet after filing for divorce.

The primary issues at the bench trial involved the division of the marital estate, including apportionment of the tax liabilities, and determination of spousal support for plaintiff. The trial court awarded the parties' marital home in Michigan to defendant, and awarded the parties' vacation home in Colorado to plaintiff. The trial court found that both parties were responsible for the excessive spending that led to the tax liabilities, and held both parties equally responsible for repayment of the tax debt. [*Glowacki v Glowacki*, unpublished per curiam opinion of the Court of Appeals, issued June 10, 2021 (Docket No. 350691) ("*Glowacki I*"), pp 1-2.]

In determining an appropriate award of spousal support, the trial court found that defendant earned $1 million annually, and even though plaintiff had not worked outside the home for several years, the court concluded that she was capable of doing so and imputed $30,000 in annual income to her. *Id*. at 2. The trial court awarded plaintiff spousal support for four years, in the amount of $30,000 a month for the first year, and $20,000 a month for each year thereafter. *Id*. Defendant was permitted to deduct from these monthly amounts certain expenses and debts for which plaintiff was held responsible, including plaintiff's 50% share of the monthly tax payments to the IRS and the state of Michigan. *Id*. at 2-3.

In *Glowacki I*, this Court vacated in part the judgment of divorce "to the extent that it requires plaintiff to pay 50% of the outstanding tax liability after the final spousal-support payment[.]" *Id*. at 10. This Court also vacated the portion of a uniform spousal support order that provided spousal support was forever barred after 48 months. *Id*. This Court reasoned that because spousal support was decided by the trial court after a contested trial, it remained subject to modification under MCL 552.28. *Glowacki I*, unpub op at 4-5. This Court denied plaintiff's request to have the case reassigned to another judge and remanded "to the trial court for reconsideration of the tax-apportionment issue." *Id*. at 10.

On remand, the trial court again apportioned the outstanding tax debt equally between the parties. Plaintiff again appealed that decision to this Court in Docket No. 359084. Plaintiff also filed a postjudgment motion seeking relief from a provision in the divorce judgment that required her to sell or refinance the parties' Colorado home within one year of entry of the judgment.

Plaintiff sought relief from the refinance-or-sell provision, pointing out that she was unable to refinance the Colorado home because the IRS had filed tax liens against the property and the amount of the liens, combined with an outstanding mortgage debt and a line-of-credit debt, exceeded the equity value of the home, and thereby prevented her from refinancing it. The trial court denied plaintiff's motion. Plaintiff appealed that decision to this Court in Docket No. 361084.

The appeals in Docket Nos. 359084 and 361084 were consolidated in this Court.[1] With regard to the tax-apportionment issue, this Court held that "the trial court's decision to again apportion the $2.7 million tax debt equally between the parties is inequitable" and it again remanded the "matter to the trial court with a directive that it more equitably apportion this joint obligation of the parties, while recognizing their actual earning capacities." *Glowacki v Glowacki*, unpublished per curiam opinion of the Court of Appeals, issued May 11, 2023 (Docket Nos. 359084 & 361040) ("*Glowacki II*"), p 6. This Court explained:

> We recognize, as did the trial court, that the tax liability at issue is a joint obligation of the parties. Generally, marital debts are treated as negative assets and typically are allocated according to the same equitable principles that govern division of marital assets. See, e.g., *Butler v Simmons-Butler*, 308 Mich App 195, 209; 863 NW2d 677 (2014).
>
> In its opinion on remand, the trial court in this case noted that plaintiff wife was 48 years old, that she did not testify regarding any physical health issues that affected her ability to work, that she at one point earned an annual income of $225,000 during the marriage, and that she had the ability to find employment in the private jet rental industry in which she had formerly worked. The trial court, citing its prior opinion, also observed that plaintiff had earned an 18% commission on amounts ranging from $35,000 in 2008 to $1,192,477.03 in 2005 while working to secure private jet rentals and transportation. The trial court found, on the basis of plaintiff's and another witness's testimony, and plaintiff's employment history, that plaintiff is "a savvy businessperson" and possessed "the capacity to earn a substantial living." The court reached this conclusion even though plaintiff had testified that her previous work dried up during the economic downturn in 2008 and 2009, and no one was flying on private jets at that time. Further, plaintiff testified that larger corporations had taken over the work that plaintiff used to do, and if plaintiff were to work for one of those companies, she would make substantially less money.
>
> Accordingly, while the trial court indeed considered plaintiff's *prior income* in formulating its opinion that plaintiff had a substantial earning capacity, it did *not* comply with one of this Court's key directives, which was to compare plaintiff's earning *capacity* to the earning capacity of defendant, who was earning $1 million annually from his successful medical practice. [*Glowacki I*], unpub op at 7. Even

---

[1] *Glowacki v Glowacki*, unpublished order of the Court of Appeals, entered April 28, 2022 (Docket No. 361040).

accepting as accurate the trial court's findings that plaintiff at one point earned $225,000 annually during the marriage, and that she earned 18% commissions on income amounts as high as $1,192,477.03 while working in the private jet rental business, which would yield a before-tax income of $214,645.00, plaintiff's earning capacity still falls far short of defendant's earning capacity. Therefore, the trial court erred by not complying with this Court's clear directive to consider and contrast the earning capacity of each party. See *Sparks*, 440 Mich at 160.[2] Moreover, considering plaintiff's age of 48 years and that she has not been employed since 2010, it is unlikely she would be able to earn even half of what defendant earns. This consideration weighs strongly against a conclusion that equal apportionment of the tax liability after the four-year period of spousal support payments ends is fair and equitable.

The trial court also was required on remand to consider "plaintiff's current life status, her necessities, or her personal circumstances." [*Glowacki I*], unpub op at p 7. In particular, defense counsel questioned plaintiff regarding deposits and withdrawals to and from her bank account in 2017, and she stated that she had borrowed money from her friends after defendant "walked out the door in January 2017." In October 2017, after plaintiff filed for divorce, she asked a friend if she could borrow $10,000 because defendant was refusing to provide her with money to pay her bills, and she had to sell her personal belongings to pay bills. Plaintiff further testified that she did not have any savings or investments left because she had invested them all in Sunrise. On redirect examination, plaintiff testified that she made deposits into her personal JP Morgan Chase bank account for $5,000 in June 2017 after selling her jewelry, and for $12,000 after selling her Rolex, and said she sold these items so she could pay her bills. Plaintiff's teenage son testified that since the summer of 2017, things had been very difficult for the family financially, and he sold a Rolex watch that defendant had gifted him for $8,000 to help plaintiff pay bills for the family. Plaintiff's son acknowledged that he regularly gave plaintiff money from his job as a lifeguard because she has "[l]imited money."

We acknowledge that conflicting evidence on many of these matters was presented at trial and there is evidence to support the trial court's finding that plaintiff's excessive spending habits contributed to the enormous tax debt. For example, while plaintiff blamed defendant's mismanagement of Sunrise, both defendant and Jeffrey Freeman, a tax professional and attorney who assisted the couple with outstanding tax issues, provided testimony indicating that plaintiff's lavish spending contributed to the tax debt.

We also observe that plaintiff appears to have made little effort to secure employment consistent with her previously demonstrated abilities during the long life of this case. Despite that she had previously earned an income well into the

---

[2] *Sparks v Sparks*, 440 Mich 141; 485 NW2d 893 (1992).

six-figure range, the record reflects that she only recently obtained employment paying her at the rate of $25 per hour. While plaintiff appears to have struggled financially at the outset of this divorce proceeding, the very substantial spousal support she has received ($360,000 annually in the first year following the divorce decree, and $240,000 annually for the three years thereafter, subject to offsets) appears to have allowed her to subsist without working for a substantial period of time, only recently securing gainful employment but at a level well below her previous earnings. Plaintiff's current life status and personal circumstances strongly suggest that she is underemployed, after having remained unemployed for a substantial period of time.

We nonetheless conclude that under these circumstances, in which the trial court has imputed income to plaintiff of $30,000 and there is no evidentiary basis to conclude that plaintiff will be able to earn an income close to defendant's income, the trial court's decision to again apportion the $2.7 million tax debt equally between the parties is inequitable. Accordingly, we again remand this matter to the trial court with a directive that it more equitably apportion this joint obligation of the parties, while recognizing their actual earning capacities. Plaintiff retains substantial earning capacity that she has thus far failed to exercise, which the trial court may once again take into consideration when fashioning a more equitable division of the joint tax obligation. [*Glowacki II*, unpub op at 4-6.]

However, this Court affirmed the trial court's denial of plaintiff's motion for relief from judgment relative to the refinance-or-sell provision in the divorce judgment, citing several reasons in support of that decision. *Glowacki II*, unpub op at 7-9.

As relevant to the instant appeal, in February 2022, while *Glowacki II* was still pending in this Court, plaintiff filed a motion for postjudgment attorney fees. In particular, plaintiff noted that there were several pending motions related to the sale of the Colorado home, and she asserted that "[t]he preservation of this asset is paramount," that she was seeking a stay of enforcement of the provision for its sale, and that she was pursuing her legal remedies in this Court. Plaintiff requested that defendant be required to pay her postjudgment attorney fees in the amount of $25,000 under MCR 3.206(D)(2)(a) because she was "unable to bear the expense of this litigation without a contribution towards her attorney fees." Plaintiff emphasized that she secured employment earning $25 an hour just a week earlier, whereas defendant earned approximately $1 million or more a year. Therefore, defendant had the ability to pay plaintiff's attorney fees. Defendant opposed plaintiff's motion.

During the hearing on plaintiff's motion, her counsel did not request $25,000, but "somewhere in the range of $100,000," in attorney fees, adding that a bill of particulars would show that plaintiff "spent approximately $150,000.00 on her attorney fees post-judgment." Counsel further informed the court that although plaintiff had "made a preliminary agreement" to work at a local gallery, she now had "some medical issues" and could not maintain that employment.

The court determined that plaintiff failed to demonstrate that she was unable to bear the expense of this action and denied her motion for postjudgment attorney fees. Plaintiff appeals.

## II. ANALYSIS

This Court reviews a trial court's decision whether to award attorney fees in a divorce action for an abuse of discretion. *Loutts v Loutts* (*After Remand*), 309 Mich App 203, 215-216; 871 NW2d 298 (2015). A court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Barrow v Wayne Co Bd of Canvassers*, 341 Mich App 473, 484; 991 NW2d 610 (2022). The trial court's findings of fact are reviewed for clear error, and its legal conclusions are reviewed de novo. *Loutts (Aft Rem)*, 309 Mich App at 216.

Michigan follows the "American Rule," which provides that " 'attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule,' " a common-law exception, or a contractual provision. *Skaates v Kayser*, 333 Mich App 61, 84; 959 NW2d 33 (2020), quoting *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). Plaintiff argues that she is entitled to attorney fees under MCR 3.206(D)(2)(a),[3] which applies to an award of attorney fees in a divorce action, and, in pertinent part, states:

> **(D) Attorney Fees and Expenses**.
>
> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.
>
> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that:
>
> (a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay[.]

MCR 3.206(D)(2)(a) allows attorney fees only as necessary to prosecute or defend a lawsuit. *Skaates*, 333 Mich App at 85. This Court has also stated that a "party may not be required to invade her assets to satisfy attorney fees when she is relying on the same assets for her support." *Id.* (citation omitted). In considering a request for attorney fees under MCR 3.206(D)(2)(a), a trial court must "give 'special consideration to the specific financial situations of the parties and the equities involved.' " *Id*. (citations omitted).

Plaintiff's initial two arguments are intertwined. First, she asserts that the trial court abused its discretion by denying her motion because she is not in a financial position to pay her attorney fees, unlike defendant who earns approximately $1 million annually. Second, she argues that the trial court abused its discretion by basing its decision on its determination that her spousal support payments were sufficient to enable her to pay her postjudgment attorney fees. As plaintiff observes, in *Myland v Myland*, 290 Mich App 691, 702; 804 NW2d 124 (2010), this Court held

---

[3] MCL 552.13(1) provides that in a divorce action, a court may require either party "to pay any sums necessary to enable the adverse party to carry on or defend the action, during its pendency."

that "a party sufficiently demonstrates an inability to pay attorney fees when that party's yearly income is less than the amount owed in attorney fees."[4] Plaintiff claims that at the time she filed her motion for postjudgment attorney fees, she was earning $25 an hour, but, by the time the motion was actually heard in May 2022, she was not working. Plaintiff also asserts that she has unspecified medical issues and owed more than $150,000 in attorney fees, whereas defendant earned $1 million or more annually and maintains a lavish lifestyle.

Plaintiff, as the party requesting attorney fees, had the burden of proving her entitlement to attorney fees under MCR 3.206(D)(2)(a), and thus had the burden of demonstrating that she was unable to bear the cost of the litigation. *Loutts (Aft Rem)*, 309 Mich App at 218. In ruling on plaintiff's motion, the trial court observed that its predecessor, following a trial, found that plaintiff had the ability to earn income herself. In the opinion and order entered after the divorce trial, the trial court stated that it had "no doubt" that plaintiff was capable of working, and imputed income of $30,000 a year to her, noting that she had testified at trial that "she is a savvy business person" and was the "driving force" behind the development of defendant's pain clinic. At the motion hearing, the trial court observed that plaintiff apparently was not exercising her earning capacity, but stated that it did not know why. Plaintiff's counsel raised the issue of plaintiff's health for the first time at the motion hearing, but failed to identify any specific health issues or fully explain how they interfered with plaintiff's ability to work. Plaintiff did not otherwise present evidence supporting her claim that she had health issues that prevented her from earning an income. After reviewing plaintiff's past credibility issues and the court's prior determination that plaintiff was capable of earning money, the trial court voiced that it was simply not going to "take your word on that today."

We are unable to conclude that the trial court abused its discretion by finding that plaintiff failed to establish facts sufficient to demonstrate that she was unable to bear the expense of the action. MCR 3.206(D)(2)(a). The court observed that it had previously been determined that plaintiff had the capacity to earn an income and that there was evidence that she was employed and earning approximately $52,000 annually.[5] To the extent that plaintiff claimed that health issues prevented her from continuing to work and earn an income, that allegation was not supported by any factual or documentary evidence, but only by counsel's unsupported allegation at the motion hearing. For example, plaintiff did not submit an affidavit or other evidence to establish or explain the nature of her alleged health condition, or explain how any health issue impacted her ability to maintain employment. Moreover, plaintiff did not submit any invoices to substantiate

---

[4] This Court subsequently explained that this "is not dispositive of the party's ability to pay in all cases." *Loutts (Aft Rem)*, 309 Mich App at 216-217. Instead, the trial court must consider the parties' financial situations and the equities involved. *Id*. at 218 (quotation marks and citation omitted).

[5] If, as alleged in plaintiff's motion, plaintiff earned $25 per hour and worked a typical 40-hour week, she would gross $1,000 each week.

the amount of her claimed attorney fees.[6]  Although the parties did not dispute that defendant had the financial ability to pay for plaintiff's postjudgment attorney fees, that alone was not sufficient to entitle plaintiff to attorney fees under MCR 3.206(D)(2)(a).  It was also necessary for plaintiff to demonstrate that she was unable to bear the expense of the action.  The trial court did not err by finding that plaintiff failed to demonstrate that she could not bear the expenses of the litigation.[7]

Although plaintiff correctly observes that "[w]ith respect to a party's ability to prosecute or defend a divorce action, a party 'may not be required to invade her assets to satisfy attorney fees when she is relying on the same assets for her support,' " *Myland*, 290 Mich App at 702 (citation omitted), the record does not support plaintiff's argument that the trial court violated this principle. At the motion hearing, the trial court focused on plaintiff's ability to earn an income and found that she was earning an hourly wage of $25 and received $1,000 weekly before taxes "in addition to the spousal support that she's paid."  In ultimately denying plaintiff's motion, rather than considering plaintiff's spousal support and requiring her to invade that support, the trial court instead focused on plaintiff's earning capacity and ability to earn an income.  There was no suggestion by the court that it expected plaintiff to invade her spousal support to pay her attorney fees or that spousal support was a factor in the court's decision to deny plaintiff's motion for attorney fees.

The record also does not support plaintiff's claim that the trial court denied her motion for postjudgment attorney fees by relying in part on a provision in the parties' divorce judgment that required her to pay defendant's attorney fees related to the sale of the Colorado home.  The pertinent provision provides:

> Should Plaintiff-wife fail to timely sell or refinance the Colorado home, Defendant-Husband shall list and sell the home within twelve (12) months from the date of entry of this Judgment of Divorce, Defendant shall be reimbursed from the proceeds of the sale of the real property or by deducting from his spousal support

---

[6] We recognize that counsel offered to produce evidence of attorney's fees of $100,000 or more after plaintiff asked for $25,000 in attorney's fees in her written motion.

[7] During the hearing on plaintiff's motion, defense counsel asserted that plaintiff could not "ask for appellate fees in the trial court level," without citation to any authority.  The trial court opined that defense counsel was correct because "[t]here is a separate statute or a separate court rule with respect to attorney fees in an appellate matter, both in the Court of Appeals and in the Supreme Court.  It's in those applicable sections of the court rule.  I looked it up previously."  Although the trial court also did not cite a specific statute or court rule, we presume that its' references were to MCR 7.216(A)(7) and (C) and MCR 7.316(A)(7) and (C), pertaining to our appellate courts' powers, including the explicit authority to award attorney fees against a vexatious litigant. Neverthelss, this Court has also previously held that MCR 3.206(C), the similarly-worded predecessor to MCR 3.206(D), "allows a trial court to award appellate attorney fees." *McIntosh v McIntosh*, 282 Mich App 471, 483; 768 NW2d 325 (2009), citing *Gates v Gates*, 256 Mich App 420, 439; 664 NW2d 231 (2003).  Regardless, the trial court reached the right result, and we find that reversal on this basis is unwarranted. *Varela v Spanski*, 329 Mich App 58, 81; 941 NW2d 60 (2019).

obligation to Plaintiff all reasonable costs (*including all reasonably incurred attorney fees*), expenses, and interest related to any action that Defendant and/or his counsel must take to address any failure on [the] part of Plaintiff with regard to this provision, including, but not limited to, either her failure to refinance the home to remove Defendant's name from the mortgage and line of credit or her failure to timely sell the real property as required pursuant to this provision. After all obligations, including but not limited to, all liens, tax liens (applied equally to each party's IRS and/or State of Michigan tax liability), mortgage, and line of credit, are paid on the property, any remaining net-sale proceeds are awarded to Plaintiff. [Emphasis added.]

Also before the court at the hearing on plaintiff's motion for attorney fees was her separate motion to modify the listing price for the Colorado home. Previously, because plaintiff failed to sell or refinance the Colorado home within one year after entry of the divorce judgment, the court entered an order, dated December 10, 2021, authorizing defendant to list the property for sale. The court's order also provided that defendant's request for attorney fees related to the sale of the Colorado property was "reserved." Later, after plaintiff filed a motion to stay proceedings and defendant filed a motion to enforce the December 10, 2021 order, the trial court entered an order, dated February 16, 2022, stating that the December 10, 2021 order "is in effect and subject to immediate enforcement." In defendant's response to plaintiff's motion to modify the listing price for the Colorado home, defendant expressly requested that the court order plaintiff to pay his attorney fees and costs associated with defending that motion. Thus, the issue whether plaintiff should be required to pay defendant's attorney fees associated with plaintiff's pending motion to modify the listing price for the Colorado home was also before the court at the hearing on plaintiff's motion for attorney fees.[8]

Contrary to what plaintiff argues, there is no indication in the record that the trial court relied on the attorney-fee provision relative to the Colorado home as a basis for denying plaintiff's motion for attorney fees. Although the trial court did briefly mention this provision during the motion hearing, the issue was before the court in the context of plaintiff's separate motion to modify the listing price for the Colorado home and defendant's request for attorney fees associated with the Colorado home. Significantly, plaintiff's counsel explained that plaintiff's request for attorney fees was a distinct issue from defendant's request for attorney fees under the provision related to the sale of the Colorado home, which counsel stated would be the subject of separate proceedings, and the trial court stated, "I understand that." As explained earlier, the trial court's ruling denying plaintiff's motion for attorney fees focused on plaintiff's ability to earn an income

---

[8] At the hearing, defendant's counsel advised the court that the Colorado home had been appraised for purposes of the divorce at $750,000, and that just days earlier, he had received "an incredible offer" to purchase the Colorado home for $1.225 million, which was accepted. Although plaintiff's motion requested that the property be listed for no less than $1.25 million, the court noted that the difference was approximately $30,000 and asked plaintiff's counsel "are we gonna argue about this?" Plaintiff's counsel responded, "No, Judge." The trial court ultimately denied plaintiff's motion to modify the listing price of the home on the basis that "the issue is now moot." The trial court's order denying the motion did not award defendant any attorney fees.

and her failure to demonstrate that she was unable to bear the expense of the action. The court did not mention or address the provision in the parties' divorce judgment regarding defendant's ability to recover attorney fees related to the sale of the Colorado home as a basis for denying plaintiff's motion for postjudgment attorney fees. Therefore, we reject this claim of error.

Affirmed.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel