*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SUMMER KAKOS,

        Plaintiff-Appellant,

v

RAY GHAZALA,

        Defendant-Appellee,

and

ADMON ISRAEL and WAAIL JAMEEL,

        Third-Party Defendants-Appellees.

UNPUBLISHED
January 15, 2026
2:10 PM

No. 368196
Macomb Circuit Court
LC No. 2021-009942-DM

Before: RIORDAN, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Plaintiff, Summer Kakos, appeals by right a September 26, 2023 judgment of divorce that (1) divided the marital estate; (2) denied plaintiff's request for spousal support from defendant, Ray Ghazala; and (3) denied plaintiff's request for attorney fees. The judgment also dismissed, with prejudice, plaintiff's third-party claims against third-party defendants, Admon Israel ("Israel") and Waail Jameel ("Jameel"). We affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND FACTS

In September 2009, the parties married. During the marriage, the parties opened a hair salon and acquired their marital home in Sterling Heights, Michigan. The parties had two children.[1] Plaintiff cared for the children and the home while defendant operated the salon.

---

[1] The parties reached an agreement concerning custody and parenting time.

-1-

Defendant managed the finances, and the parties' marriage was volatile. Plaintiff accused defendant of domestic violence and infidelity.

In October 2016, Miriam Said ("Said"), defendant's mother, gave defendant $550,000 to be used for her care during her life, with any remaining funds to be kept by defendant. The parties dispute the manner in which defendant used the funds, but it is not disputed that plaintiff executed an agreement that she did not seek to claim the funds as her own. After Said died, defendant used the funds to purchase a property on Granger Road in Ortonville, Michigan. Defendant also inherited an additional $70,000 from Said at the time of her death. Defendant kept Said's funds, as well as her jewelry and gold, in a safe-deposit box at Huntington Bank until the COVID-19 pandemic. Defendant then brought the contents of the box to the marital home, and the contents were stored in a locked metal box under the bed that the parties shared. At trial, the parties disputed the amount of money and cashier's checks contained in the box.

On September 1, 2021, plaintiff quit claimed her interest in the marital home to defendant, who agreed to sell the property to Jameel for $150,000. Notary Amera Yousif ("Yousif") notarized the deed. In a September 1, 2021 document entitled "promissory note," defendant agreed to convey the marital home to Jameel to satisfy a $125,000 debt that defendant owed to Jameel. Jameel agreed to pay defendant $25,000. Also, on September 1, 2021, Marven Nafsu ("Nafsu"), a licensed real-estate agent, prepared a purchase agreement for Israel's purchase of the Granger property. Defendant and Israel agreed that Israel would pay $400,000 for the Granger property under a 12-year land contract, with monthly payments of $2,500. The agreement was not signed until September 14, 2021.

On September 14, 2021, plaintiff filed for divorce, in relevant part, requesting the trial court to equitably divide the marital estate and award her spousal support and attorney fees. On September 30, 2021, defendant sold the Granger property to Israel under a land contract and sold the marital home to Jameel under a land contract. During the proceedings, plaintiff was permitted to file third-party complaints against Jameel and Israel. Plaintiff remained in the marital home with the children for the duration of the proceedings under a lease agreement, and defendant maintained the status quo financially. Defendant and plaintiff would later accuse each other of emptying the locked metal box and concealing its contents, including the cash, jewelry, and gold.

The bench trial commenced in June 2023 and took place over five dates. Plaintiff accused defendant of abusive conduct during the marriage, which defendant denied. Plaintiff and defendant offered dramatically different testimony as to the marital assets and the income derived from the salon. Evidence was also presented as to how defendant spent his inheritance from Said, and plaintiff argued that defendant commingled the inheritance funds with marital funds. Plaintiff and defendant also testified about the debt that they accumulated during the proceedings. Significant testimony was presented concerning real estate that is not at issue in this appeal. Plaintiff argued that defendant fraudulently conveyed the marital home and the Granger property, but defendant, Jameel, and Israel testified that the conveyances were legitimate transactions. To support defendant's position, Nafsu and Yousif testified about their involvement in the transactions. At the close of proofs, the trial court dismissed plaintiff's claim against Israel and took the remaining issues under advisement.

On September 26, 2023, the trial court entered the judgment of divorce. Plaintiff's appeal followed. After the briefs were filed, plaintiff moved this Court to remand to the trial court so plaintiff could move for a new trial on the basis of allegations of fraud and newly discovered evidence. This Court denied the motion, "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *Kakos v Ghazala*, unpublished order of the Court of Appeals, entered April 22, 2025 (Docket No. 368196).

## II. DIVISION OF THE MARITAL ESTATE

Plaintiff raises several challenges to the trial court's property award. We consider them in turn and conclude that, although the trial court did not clearly err by finding that the marital home and the Granger property were not fraudulently transferred, it is still necessary to vacate the property award because the trial court failed to make factual findings as to the amount that remains, if any, from defendant's inheritance from Said.

## A. STANDARDS OF REVIEW

"In a divorce action, we review for clear error a trial court's factual findings related to the division of marital property." *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). We also review for clear error a trial court's findings of fact regarding whether a particular asset even qualifies as marital or separate property. *Woodington v Shokoohi*, 288 Mich App 352, 357; 792 NW2d 63 (2010). Additionally, we give special deference to a trial court's findings of fact stemming from credibility determinations. *Welling v Welling*, 233 Mich App 708, 709; 592 NW2d 822 (1999). This is because "[t]he trial court ha[s] the best opportunity to view the demeanor of the witnesses and weigh their credibility." *Pelton v Pelton*, 167 Mich App 22, 26; 421 NW2d 560 (1988). A trial court's finding of fact is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Welling*, 233 Mich App at 709. "If the trial court's findings of fact are upheld, this Court must decide whether the dispositive ruling was fair and equitable in light of those facts. The dispositional ruling is discretionary and should be affirmed unless this Court is left with the firm conviction that the division was inequitable." *Id.* (quotation marks and citation omitted).

Questions of law are reviewed de novo. *Cunningham*, 289 Mich App at 200. "De-novo review means that we review the legal issue independently, without deference to the lower court." *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022) (quotation marks and citation omitted).

"A trial court's decision to dismiss an action under MCR 2.504 is reviewed for clear error." *In re ASF*, 311 Mich App 420, 426; 876 NW2d 253 (2015).[2] "[A] motion for involuntary dismissal calls upon the trial judge to exercise his [or her] function as trier of fact, weigh the evidence, pass

---

[2] Although the trial court stated that it granted summary disposition in favor of Israel, it is clear from the trial court's ruling that the court intended to involuntarily dismiss plaintiff's claim against him under MCR 2.504(B)(2). See MCR 2.504(B)(2). See also *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995).

upon the credibility of witnesses and select between conflicting inferences. The plaintiff is not entitled to the most favorable interpretation of the evidence." *Id*. at 427 (quotation marks and citations omitted).

## B. PROPERTY DIVISION LEGAL FRAMEWORK

The purpose of a divorce judgment is to fix the property rights and interests of the parties. *Westgate v Westgate*, 291 Mich 18, 28; 288 NW 860 (1939). Therefore, "[a] judgment of divorce . . . must include . . . a determination of the property rights of the parties. . . ." MCR 3.211(B)(3). "Property settlement provisions in a divorce judgment are typically final and cannot be modified by the court." *Quade v Quade*, 238 Mich App 222, 226; 604 NW2d 778 (1999).

"The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Gates v Gates*, 256 Mich App 420, 423; 664 NW2d 231 (2003). When dividing the marital estate,

> the following factors are to be considered wherever they are relevant to the circumstances of the particular case: (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. There may even be additional factors that are relevant to a particular case. For example, the court may choose to consider the interruption of the personal career or education of either party. The determination of relevant factors will vary depending on the facts and circumstances of the case. [*Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992) (citation omitted).]

"The trial court must consider all relevant factors but not assign disproportionate weight to any one circumstance." *Berger v Berger*, 277 Mich App 700, 717; 747 NW2d 336 (2008) (quotation marks and citation omitted). "The trial court is given broad discretion in fashioning its rulings and there can be no strict mathematical formulations." *Sparks*, 440 Mich at 158-159. "A division of property in a divorce action need not be equal, but it must be equitable." *Jansen v Jansen*, 205 Mich App 169, 171; 517 NW2d 275 (1994). "[A]ny significant departure from congruence must be clearly explained by the trial court. The trial court's disposition of marital property is intimately related to its findings of fact." *Gates*, 256 Mich App at 423 (citations omitted).

In reaching an equitable division, the trial court must first determine what property is considered marital property and what property is considered separate property. *Cunningham*, 289 Mich App at 200. Marital assets are generally subject to division between the parties, but the parties' separate assets may not be invaded unless certain exceptions exist. *Reeves v Reeves*, 226 Mich App 490, 494; 575 NW2d 1 (1997). Specifically, the "trial court may utilize its equitable powers under MCL 552.23(1) and MCL 552.401 to award separate property to the parties in order to reach an equitable result." *Skaates v Kayser*, 333 Mich App 61, 82; 959 NW2d 33 (2020). As relevant to this case, MCL 552.23(1) authorizes a court to invade separate assets if, after the division of marital assets, one party demonstrates additional need. *Reeves*, 226 Mich App at 494.

## C.  THE MARITAL HOME

The trial court found that defendant and Jameel entered into a land contract for $150,000 with respect to the marital home to satisfy defendant's $125,000 debt to Jameel.  On this basis, the trial court determined that plaintiff failed to establish that defendant or Jameel engaged in collusion, or fraud, to deprive her of marital property.  Plaintiff argues that these findings are erroneous.  We disagree.

In a divorce action, "when a party has dissipated marital assets without the fault of the other spouse, the value of the dissipated assets may be included in the marital estate." *Woodington*, 288 Mich App at 368.  Fraudulent transfers to third parties can provide a basis for recapturing an asset for distribution as part of the marital estate, when the transfer was made to deprive the other spouse of an interest in marital property. *Thames v Thames*, 191 Mich App 299, 302; 477 NW2d 496 (1991).  "This Court has long recognized that the jurisdiction of a divorce court is strictly statutory and limited to determining the rights and obligations between the husband and wife, to the exclusion of third parties. . . ." *Cassidy v Cassidy*, 318 Mich App 463, 493; 899 NW2d 65 (2017) (alteration in original; quotation marks and citation omitted).  However, when fraud is alleged, "third parties can be joined in the divorce action . . . if they have conspired with one spouse to defraud the other spouse of a property interest." *Id*. (quotation marks and citation omitted).  "In such circumstances, [t]he door of the equity court is open to hear a claim that a fraud has been perpetrated on the court."  *Id*. at 493-494 (alteration in original; quotation marks and citation omitted).

In the present case, defendant and Jameel testified that defendant owed Jameel $125,000, and this testimony is supported by three promissory notes.  Defendant testified that he decided to convey the marital home to Jameel to satisfy the debt after consulting with plaintiff.  Defendant's testimony is supported by plaintiff's execution of the September 1, 2021 quitclaim deed, which was notarized by Yousif.  Yousif testified that plaintiff executed the quitclaim deed in her office when defendant was not present.  Plaintiff testified that she signed the quitclaim deed under duress, but Yousif, who knew plaintiff, testified that she did not think that plaintiff was under duress when executing the deed.  The trial court found Yousif's testimony to be "completely and totally credible."  Nafsu, who was involved in the transaction and drafted the purchase agreement on September 5, 2021, testified that the title company was aware of the divorce proceedings and approved the transaction.

Although we acknowledge that the timing of this transaction is suspicious, we defer to the trial court on determinations stemming from witness credibility.  See *Welling*, 233 Mich App at 709.  Moreover, the documentary evidence does not clearly demonstrate that defendant and Jameel acted in concert to deprive plaintiff of her rightful share of the marital home.  Therefore, we are not left with a definite and firm conviction that a mistake has been made regarding the marital home or the dismissal of plaintiff's claim against Jameel.  See *id*.

## D. THE GRANGER PROPERTY

Plaintiff similarly argues on appeal that the trial court clearly erred by finding that Israel and defendant did not engage in a concerted effort to defraud plaintiff of her rightful share of the Granger property. We disagree.

In May 2021, defendant purchased the Granger property for $472,350 from Said's funds in his name only, which upset plaintiff. Defendant owed Israel $20,000 for improvements that he made to the Granger property after defendant purchased it. Defendant testified that he decided to sell the Granger property to Israel for $400,000 to avoid further conflict with plaintiff. Moreover, defendant decided to execute the sale in an unconventional manner—a land contract—to avoid extra costs. Although the purchase agreement and addendum were not executed until September 30, 2023—the day that plaintiff filed for divorce—Nafsu testified that he prepared the purchase agreement on September 1, 2021. As with the marital home, we note the suspicious timing of the Granger sale, but the documentary evidence does not clearly indicate fraud, and we again defer to the trial court's findings that stem from witness credibility. See *Welling*, 233 Mich App at 709. Consequently, we conclude that the trial court did not clearly err by dismissing plaintiff's claim against Israel.

Plaintiff also argues that the trial court's rulings concerning the land contract for the Granger sale were inconsistent. Although there was some confusion when the trial court rendered its ruling from the bench on July 20, 2023, the trial court sought to remedy this confusion by issuing a July 24, 2023 opinion and order. "[A] court speaks through its written orders and judgments, not through its oral pronouncements." *Cassidy*, 318 Mich App at 509 (quotation marks and citation omitted). To the extent that a trial court's oral pronouncement varies from the actual order, the order controls. See *id*. The judgment of divorce is clear as it relates to the land contract on the Granger property.

Finally, to the extent that plaintiff challenges the trial court's finding that the Granger property was never marital property, we are not left with a definite and firm conviction that the finding was erroneous. See *Welling*, 233 Mich App at 709. This finding was based on the trial court's conclusion that defendant used his inheritance from Said to purchase the property, and defendant kept the inheritance funds separate from marital property at all times. It is well settled that "an inheritance received by one spouse during the marriage and kept separate from marital property is separate property." *Cunningham*, 289 Mich App at 201. "[S]eparate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and treated by the parties as marital property." *Id*. (quotation marks and citation omitted). However, "[t]he actions and course of conduct taken by the parties are the clearest indicia of whether property is treated or considered as marital, rather than separate, property." *Id*.

In this case, defendant received $550,000 from Said in the form of a cashier's check, and the money was to be used for Said's care during her life. Plaintiff executed an acknowledgment the $550,000 was not her property, and she would not lay claim to it. It was only after plaintiff signed this acknowledgment that defendant deposited the funds into his separate bank account, which demonstrates his clear intent to keep the funds separate from plaintiff during his and Said's lifetimes. After Said's death, defendant split whatever funds remained into different cashier's

-6-

checks and kept them in a safe-deposit box. Defendant's and plaintiff's names were listed as payees on the cashier's checks. Later, during the COVID-19 pandemic, defendant brought the checks to the marital home. He placed them in the locked box, which was kept under the bed until some point after plaintiff filed for divorce in September 2021. In the trial court's July 24, 2023 opinion and order, the trial court found: "Defendant continued ownership of the [safe deposit] box after the death of his mother and his wife's name was added as a co-signor as a means for her to receive its contents after defendant's death." We are not persuaded that commingling occurred in this case. Accordingly, the trial court did not clearly err by concluding that the Granger property was not marital property, and plaintiff is not entitled to relief on this issue. See *Welling*, 233 Mich App at 709.

### E. THE TRIAL COURT'S VALUATION OF CERTAIN ASSETS

Plaintiff next challenges the trial court's finding that the salon was worth $54,000. Plaintiff also argues that the trial court failed to make a valuation of the amount of Said's funds that remained at the time of trial and simply ordered plaintiff be awarded half of whatever remained. We disagree that the trial court erred by valuing the salon at $54,000, but we agree that remand is necessary for further factual findings concerning Said's funds.

"[I]t is settled law that trial courts are required by [MCR 3.211(B)] to include a determination of the property rights of the parties in the judgment of divorce." *Olson v Olson*, 256 Mich App 619, 627; 671 NW2d 64 (2003).

> As a prelude to this property division, a trial court must first make specific findings regarding the value of the property being awarded in the judgment. There are numerous ways in which a trial court can make such a valuation, but the most important point is that the trial court is obligated to make such a valuation if the value is in dispute. Accordingly, we have held that a trial court clearly errs when it fails to place a value on a disputed piece of marital property. [*Id*. at 627-628 (footnote and citations omitted).]

The valuation of property can be based on (1) expert testimony; (2) lay testimony; (3) the parties' testimonies; or (4) testimony of an independent expert appointed by the trial court "to provide it with a perhaps more objective valuation." *Id*. at 627 n 4. If "marital assets were valued between divergent estimates given by expert witnesses," "the trial court has great latitude in arriving at a final figure." *Pelton*, 167 Mich App at 26.

### 1. THE SALON

Defendant was awarded the salon, but he was solely responsible for its debts. The trial court valued the salon at $54,000, and awarded plaintiff $27,000 for her interest in the salon. Plaintiff challenges these findings, but we disagree with her contentions.

At trial, the parties stipulated to admission of "a business evaluation" relating to the salon so Jason Bodmer, "the expert business evaluator," did not have to testify. Bodmer valued the salon at $54,000. Plaintiff estimated that the salon was worth between $250,000 and $300,000. Plaintiff admitted, however, that she did not have the expert knowledge required to perform an evaluation

as to the value of a business. The trial court ostensibly placed more weight on Bodmer's valuation of the salon, which was in the trial court's province. See *Barnes v 21st Century Premier Ins Co*, 334 Mich App 531, 552; 965 NW2d 121 (2020). Therefore, we conclude that the trial court did not clearly err by valuing the salon at $54,000. See *Welling*, 233 Mich App at 709.

## 2. THE AMOUNT REMAINING FROM THE SAID INHERITANCE

Next, plaintiff challenges the trial court's failure to assign a specific value to the amount of funds remaining from the inheritance Said gave defendant. As noted, we agree that remand is necessary to resolve this issue.

It was undisputed that Said gave defendant $550,000 for her care during her life, and whatever remained at her death was defendant's inheritance. Before Said's death in 2018, $62,000 of the funds were used to purchase 36429 Park Place in Sterling Heights, where Said lived. Additionally, defendant also purchased a different property on Skylark Court in Sterling Heights for $178,000 with Said's funds in February 2017. But that property was sold in December 2017 for $210,000, and at least $178,000 was returned to Said's funds.

Contrary to plaintiff's contention on appeal, defendant did not testify that he still possessed $488,000 from the $550,000 inheritance *at the time of trial in 2023*. Rather, he testified repeatedly that he possessed $488,000 from the inheritance *in 2021*. Defendant then further testified that he used the funds to purchase the Granger property for $472,350 in May 2021. If this testimony is believed, only $15,650 remained from the $550,000 after May 2021. Notably, when defendant was asked if he had "additional inheritance money" left in September 2021, defendant responded: "No." The record also reflects that defendant received an additional $70,000 from Said when she died. However, it is unclear whether defendant used those funds. In sum, it is murky how much, if any, remained at the time of trial from the $550,000 inheritance funds. It is also not clear which party possessed the contents of the locked box, where cash was stored under the parties' bed.

In its July 24, 2023 opinion and order, the trial court made findings consistent with this record about defendant using the $550,000 to purchase real property before and after Said's death. The trial court also noted that a safe-deposit box contained Said's cash but did not make a finding as to how much remained when Said died. Although the trial court acknowledged that defendant brought the contents of the safe-deposit box to the marital home and put it in a locked box under the bed, the trial court did not make any more relevant findings. The trial court simply determined that plaintiff was "awarded one half of . . . [the] remainder of the cash kept in the mother's safe-deposit box and one half (1/2) of the money remaining from the $550,000.00 fund [Said] gave to defendant for her care on October 31, 2016." The trial court also ordered the parties to "cooperate with each other to achieve a fair and equitable division of marital property on their own."

We conclude that it is necessary to remand to the trial court so that more specific factual findings can be made as to how the $550,000 inheritance funds were spent, and how much remained at the time of trial. The trial court should also make a finding as to how much cash was in the locked box. The trial court may hold additional hearings and receive additional exhibits and testimony as, in its discretion, it deems necessary. If the trial court concludes that it does not have ample information to determine the issues related to the inheritance, it may appoint its own

independent expert.  See MRE 706(a).  See also *Steckley v Steckley*, 185 Mich App 19, 23; 460 NW2d 255 (1990).

Because of this holding, it is necessary to vacate the property award in its entirety to grant the trial court latitude to revise the property distribution in accordance with equitable principles after it determines the amount that remains, if any, from the inheritance.  Because further findings are necessary, we "cannot reasonably determine at this time whether the property division . . . is equitable," *McNamara v Horner,* 249 Mich App 177, 189; 642 NW2d 385 (2002), and decline to consider any such arguments from plaintiff's appeal.

## IV.  SPOUSAL SUPPORT

Plaintiff next argues that the trial court's decision not to award her spousal support was wholly inequitable and left her in a position of need.  Plaintiff also argues that the trial court failed to support its decision with the necessary findings of fact.  We conclude that remand is warranted.

We review a trial court's decision concerning spousal support for an abuse of discretion. *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012).  We review for clear error the trial court's factual findings regarding spousal support.  *Id*. at 26.  "We must affirm the trial court's dispositional ruling unless we are convinced that it was inequitable."  *Id*.

As previously explained, it is necessary to vacate the property award because the trial court failed to make factual findings as to the amount that remains, if any, from defendant's inheritance. As a result, we also vacate the trial court's holding that plaintiff was not entitled to spousal support and remand for further proceedings because "the alimony award goes hand in glove with the property distribution[.]"  *Magee v Magee*, 218 Mich App 158, 165; 553 NW2d 363 (1996) (quotation marks and citation omitted).

On remand, trial court may order support "in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case."  MCL 552.23(1).  Among the factors that a court should consider are (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the abilities of the parties to work; (4) the source and the amount of property awarded to the parties; (5) the parties' ages; (6) the abilities of the parties to pay support; (7) the present situation of the parties; (8) the needs of the parties; (9) the parties' health; (10) the parties' prior standard of living and whether either is responsible for the support of others; (11) the contributions of the parties to the joint estate; (12) a party's fault in causing the divorce; (13) the effect of cohabitation on a party's financial status; and (14) general principles of equity. *Woodington*, 288 Mich App at 356.

In this case, after the trial court reaches an equitable distribution of property, the trial court must consider the relevant spousal support factors as they pertain to the parties and make specific findings of fact explaining its reasons for it ultimate spousal support determination.  Failure to do so will preclude appellate review and require another remand.  See *Id*. at 354.  The trial court must "keep in mind that its goal is to reach a result that is just and reasonable under the circumstances and that balance[s] the incomes and needs of the parties in a way that will not impoverish either

party." *Myland v Myland*, 290 Mich App 691, 699; 804 NW2d 124 (2010) (alteration in original; quotation marks and citation omitted).

## V. ATTORNEY FEES

Finally, plaintiff argues that she was entitled to attorney fees under MCL 552.13(1) and MCR 3.206(D)(2), and that the trial court abused its discretion by failing to award them. For the reasons already discussed, it is necessary to vacate the trial court's division of the marital estate and denial of spousal support. Because the trial court's decisions on these issues on remand may impact its decision concerning attorney fees, we also vacate the trial court's holding that plaintiff is not entitled to attorney fees and remand for further findings of fact and a new disposition, if warranted. On remand, the trial court must revisit the attorney-fee decision after the issues of spousal support and property division are settled. When considering whether plaintiff is entitled to attorney fees, the trial court should "give special consideration to the specific financial situations of the parties and the equities involved." See *Loutts v Loutts (After Remand)*, 309 Mich App 203, 218; 871 NW2d 298 (2015) (quotation marks and citation omitted). The trial court must make findings of fact to support its decision.

## VI. CONCLUSION

We affirm in part, vacate in part, and remand for further proceedings. We do not retain jurisdiction. In light of our conclusion, we need not revisit plaintiff's motion to remand to the trial court so that plaintiff can move for a new trial based on allegations of fraud and newly discovered evidence.

/s/ Michael J. Riordan
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado